William P. Donovan, Jr. (SBN 155881)
**DECHERT LLP**
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Tel: (213) 808-5767
Fax: 213-808-5760
bill.donovan@dechert.com

D. Brett Kohlhofer (*pro hac vice* pending)
**DECHERT LLP**
1900 K Street, N.W.
Washington, D.C. 20006
Tel: 202-261-3300
Fax: 202-261-3333
d.brett.kohlhofer@dechert.com

Theodore E. Yale (*pro hac vice* forthcoming)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendant BDO GOVERNMENT
SERVICES, LLC f/k/a HORNE LLP*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES of AMERICA, *ex rel.* HEATHER WIDEN,<br><br>              Plaintiff,<br><br>     vs.<br><br>BDO GOVERNMENT SERVICES, LLC f/k/a HORNE LLP, *et al.*,<br><br>              Defendants. | Case No. 2:22-CV-1893-JAM-AC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BDO GOVERNMENT SERVICES, LLC f/k/a HORNE LLP'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Second Amended Complaint Filed: December 11, 2025<br><br>  Date:  March 24, 2026<br>  Time: 1:00 P.M.<br>  Judge: Hon. John A. Mendez<br>  Courtroom 6, 14th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.     Congress Enacted the Emergency Rental Assistance Program to Facilitate a Prompt Injection of Financial Relief for Americans Struggling to Pay Rent During the COVID-19 Pandemic. ..........................................................................................2

    II.    California Engaged Horne to Administer ERAP Funds, Subject to Extensive Oversight and Participation from the Department of Housing and Community Development (HCD). ............................................................................................3

    III.   After Being Fired from Her Job at HCD, Plaintiff Sued Horne for Failing to Catch and Stop Fraudulent Claims Made *by Others to Horne* for ERAP Relief Funds. ..............3

ARGUMENT...........................................................................................................................5

    I.     The SAC Does Not State a Claim Under the FCA. ............................................5

        A.    The SAC's Allegations Do Not Support an FCA Claim Against Horne. ................5

        B.    The SAC Does Not State a Claim for Causing California to Make a False Certification. .........................................................................................8

        C.    The SAC Does Not State a "Reverse" FCA Claim. ......................................10

        D.    The SAC Does Not State a Claim for an FCA Conspiracy. ...............................11

        E.    The SAC Fails to State a False Records Claim. .........................................11

        F.    The SAC Does Not Plead Materiality. .................................................11

        G.    The SAC Does Not Plead Scienter. ....................................................13

    II.    In All Events, Claims Concerning FCA Violations Outside of California Should Be Dismissed. ...........................................................................................14

    III.   Plaintiff's Negligence Claim Fails as a Matter of Law. ...................................14

    IV.   The SAC Should Be Dismissed In Its Entirety with Prejudice. ..........................15

CONCLUSION......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002) ................................................................................5, 6, 7

*United States ex rel. Anderson v. N. Telecom, Inc.*,
    52 F.3d 810 (9th Cir. 1995) ........................................................................................14

*Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*,
    2012 WL 1400302 (C.D. Cal. Apr. 23, 2012) ...........................................................8

*Brown v. USA Taekwondo*,
    483 P.3d 159 (Cal. 2021).............................................................................................15

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...............................................................................5, 6, 15

*Davis v. Nadrich*,
    94 Cal. Rptr. 3d 414 (Ct. App. 2009) .......................................................................14

*Dofoms v. Fed. Home Loan Mortg. Corp.*,
    2011 WL 1232989 (E.D. Cal. Mar. 31, 2011) ...........................................................8

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ....................................................................8

*United States ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ..................................................................................5, 6

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
    874 F.3d 905 (6th Cir. 2017) .................................................................................10, 11

*United States ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) ......................................................................................11

*Kirkpatrick v. Home Depot U.S.A.*,
    2025 WL 2029714 (E.D. Cal. July 21, 2025).............................................................13

*United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*,
    491 F.3d 254 (5th Cir. 2007) ........................................................................................6

*Larson v. UHS of Rancho Springs, Inc.*,
    179 Cal. Rptr. 3d 161 (Ct. App. 2014) .......................................................................14

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
    245 F.3d 1048 (9th Cir. 2001) .....................................................................................8

*Lesnik v. Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019).......................................................................11

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

*United States ex rel. Lesnik v. ISM Vuzem d.o.o.*,
   112 F.4th 816 (9th Cir. 2024) ..................................................................................................10

*United States ex rel. Lewis v. Honolulu Cmty. Action Program, Inc.*,
   2019 WL 4739283 (D. Haw. Sept. 27, 2019) .............................................................................6

*United States ex rel. Lupo v. Quality Assurance Servs., Inc.*,
   242 F. Supp. 3d 1020 (S.D. Cal. 2017)....................................................................................11

*United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*,
   2008 WL 2857372 (D. Idaho July 23, 2008)..............................................................................9

*United States ex rel. Mateski v. Raytheon Co.*,
   745 F. App'x 49 (9th Cir. 2018) ................................................................................................8

*Moller v. Cnty. of San Bernardino*,
   792 F. Supp. 3d 1038 (C.D. Cal. 2024) ...................................................................................15

*Nance v. United States*,
   2023 WL 5211606 (N.D. Ill. Aug. 14, 2023) ...........................................................................15

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .........................................................................................................5

*United States ex rel. Puhl v. Terumo BCT*,
   2019 WL 6954317 (C.D. Cal. Sept. 12, 2019) ......................................................................9, 10

*United States ex rel. Rose v. Stephens Inst.*,
   909 F.3d 1012 (9th Cir. 2018) ...................................................................................................7

*Ryan v. Microsoft Corp.*,
   147 F. Supp. 3d 868 (N.D. Cal. 2015).......................................................................................8

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
   618 F.3d 505 (6th Cir. 2010) .....................................................................................................6

*Snow-Erlin v. United States*,
   470 F.3d 804 (9th Cir. 2006) ...................................................................................................15

*Steinle v. United States*,
   17 F.4th 819 (9th Cir. 2021) ....................................................................................................15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................................................11

*United States ex rel. Turner v. Dynamic Med. Sys., LLC*,
   2022 WL 20804350 (E.D. Cal. Jan. 24, 2022) .......................................................................5, 7

*Turner v. Westfield Washington Twp.*,
   2022 WL 17039087 (7th Cir. Nov. 17, 2022) .........................................................................2, 7

-iii-

*United States v. Blue Cross of Cal., Inc.*,
2024 WL 1020481 (E.D. Cal. Mar. 7, 2024)......................................................................6, 8, 9

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ...............................................................................................7

*Gonzalez ex rel. United States v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ........................................................................................14, 15

*United States v. Vandewater Int'l Inc.*,
2019 WL 6917927 (C.D. Cal. Sept. 3, 2019) ........................................................................11

*Univ. Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016).............................................................................*5*, 7, 11, 12, 13

*Wang v. FMC Corp.*,
975 F.2d 1412 (9th Cir. 1992) ............................................................................................14

*Williams v. Med. Support L.A.*,
2023 WL 8798089 (9th Cir. Dec. 20, 2023)...........................................................................6

*Wong v. Glendale Adventist Med. Ctr.*,
2018 WL 1179641 (Cal. Ct. App. Mar. 7, 2018).....................................................................14

**Statutes and Rules**

15 U.S.C. § 9058a.............................................................................................................*passim*

15 U.S.C. § 9058c...................................................................................................................2

31 U.S.C. 3729.................................................................................................................*passim*

Fed. R. Civ. P. 8(a) ...............................................................................................1, 5, 12

Fed R. Civ. P. 9(b) .........................................................................................5, 7, 11, 13

**INTRODUCTION**

The Second Amended Complaint (ECF No. 42, "SAC") fails to state a claim under the False Claims Act ("FCA") for multiple independent reasons. Most notably, the SAC does not identify a single "claim" by Horne LLP ("Horne") to the Government—the *sine qua non* of any FCA violation. Nor does it adequately allege any false statement or certification by Horne, whether express or implied. Instead, the crux of Plaintiff's case is that in processing COVID relief claims on behalf of California, Horne did not do enough to police against fraud by others. But that is not enough to state a claim that Horne defrauded the Government. At best, the SAC raises a run-of-the-mill breach of contract dispute that Plaintiff has no standing to bring and that, in any event, has no merit.

Even if a false claim had been alleged, the SAC does not plead materiality: it makes clear California had full knowledge of Horne's practices through regular and direct oversight by the state Department of Housing and Community Development ("HCD")—Plaintiff's employer—yet continued to pay Horne and, indeed, expanded Horne's role. The SAC also does not plead scienter, alleging at most that Horne was negligent or could have done more—which is not actionable under the FCA. At best, it alleges Horne *acted* knowingly in administering the Emergency Rental Assistance Program ("ERAP" or "ERA Program"), but that is not sufficient to plead that Horne knowingly presented or caused a false claim.

The SAC's theory that Horne "caused" California to submit a false certification through an Obligated Funds Certification ("OFC") also fails because the OFC concerned the amount of funds distributed, not the absence of fraud. In any event, California's certification was not a "claim" because it was not a request for payment. Moreover, Plaintiff's own allegations establish that HCD independently knew how Horne was administering funds when it submitted the OFC to the U.S. Department of the Treasury ("Treasury").

The SAC's reverse FCA and conspiracy claims also fail for several reasons. Chiefly, they are derivative of Plaintiff's other defective claims and do not satisfy Rules 8 or 9(b).

In all events, the SAC's claim that Horne is liable for Plaintiff's termination because it negligently failed to stop others from defrauding ERAP is frivolous. Horne plainly owed no duty to an HCD employee to prevent HCD from firing her, and intervening acts by Plaintiff and her employer break any chain of causation. Thus, for all these reasons, as set forth below, the SAC should be dismissed with prejudice.

---

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

**BACKGROUND**

**I.    Congress Enacted the Emergency Rental Assistance Program to Facilitate a Prompt Injection of Financial Relief for Americans Struggling to Pay Rent During the COVID-19 Pandemic.**

In December 2020, Congress enacted ERAP to provide an initial round of financial relief to vulnerable Americans to assist with rent and related expenses during the pandemic. 15 U.S.C. § 9058a(c), (k)(3). A few months later, in March 2021, Congress allocated additional funds for the ERA Program ("Round 2") through the American Rescue Plan Act. 15 U.S.C. § 9058c. Rounds 1 and 2 were structurally similar.

ERAP directed the Treasury to allocate funds to local governments ("Grantees"), based on a statutory formula. 15 U.S.C. §§ 9058a(b), 9058c(b). Grantees, in turn, distributed relief to applicants. Applications for relief funds could be submitted by tenants or landlords with a tenant's signature. 15 U.S.C. § 9058a(f). The law specifies what kinds of rental expenses the funds could be used to cover, *id.* § (c)(2), and establishes criteria for "eligible households," *id.* § (k)(3). No provisions of ERAP mandate that, or specify how, Grantees must police possible fraud by applicants purporting to meet the "eligible households" criteria.

Distributing relief funds quickly was a priority for Congress under ERAP. To incentivize Grantees to move quickly to distribute relief funds, Congress created a mechanism under which funds not obligated by September 30, 2021 would be reallocated to other Grantees that had distributed funds more quickly. *Id.* § (d). In Round 2, Congress embedded a similar use-it-or-lose-it provision. 15 U.S.C. § 9058c(e).

Under ERAP, while the statute includes criteria for assessing whether an applicant is an "eligible household," 15 U.S.C. § 9058a(k)(3), Congress delegated to state and local Grantees the authority to decide whether applicants qualified for ERAP funds. *Id.* (defining "eligible household" as one "with respect to which *the eligible grantee involved determines*" it meets the criteria); *see Turner v. Westfield Washington Twp.*, 2022 WL 17039087, at *1 (7th Cir. Nov. 17, 2022) ("local governments … determine [ERAP] eligibility").

When Treasury distributed Round 1 and Round 2 funds to the state and local Grantees pursuant to the above-referenced formula, it required them to accept certain terms and conditions (collectively, "Terms"). *See* SAC ¶¶ 29, 31. But no part of the statute establishing ERAP, the Terms, any Treasury regulation, or any Treasury informal guidance requires (or even contemplates) Grantees making certifications to the Government about their efforts to police applicant or household eligibility and/or prevent ERAP-related fraud.

-2-

**II.  California Engaged Horne to Administer ERAP Funds, Subject to Extensive Oversight and Participation from the Department of Housing and Community Development (HCD).**

Under ERAP, California was allocated $1.5 billion in Round 1 funding and $1.2 billion in Round 2 funding. SAC ¶ 25.[1] To implement its ERA Program, California enacted SB 91, which directed HCD to distribute the federal rental assistance funds. Cal. Health & Safety Code § 50897 *et seq*. SB 91 permitted HCD to engage a vendor to administer the program. *Id.* § 50897.3(a)(1); SAC ¶ 25.

In March 2021, Horne responded to HCD's Request for Proposal (the "Bid") concerning ERAP administration and disbursement. SAC ¶¶ 37-38. As incorporated into the SAC, HCD later reached an agreement with Horne to administer the ERA Program, memorialized by a 60-page contract ("Contract") that documents Horne's responsibilities in painstaking detail. *Id.* ¶¶ 39-42, 40 n.10 (attached as Ex. A). Under the Contract, HCD provided all ERAP funds to Horne, including both Horne's administrative fees "and the funds to be paid to eligible landlords and tenants." *Id.* ¶ 45. Horne then received ERAP applications and determined applicant eligibility. *Id.* ¶ 39. The Contract contemplated HCD's involvement and oversight and even specified how Horne was to allocate its team, including how much staff was to focus on detecting fraud. Contract, Ex. A § 6(B); *see id.* at 21 (HCD approved training programs on assessing eligibility).

In practice, Horne would flag suspicious applications directly to HCD for review. SAC ¶ 51 & Ex. C. In addition to the status reports and data called for in the Contract, Horne also conducted "routine presentation[s]" to HCD about its administration of the state ERA Program. SAC ¶ 50. The California State Controller's Office ("SCO") also "regularly reviewed Horne's administration of the ERA program." *Id.* ¶ 53.

Despite rhetoric about Horne's performance, Plaintiff does not point to any part of the Contract Horne supposedly violated. Nor does Plaintiff contend that HCD believed Horne's performance was subpar. In fact, Plaintiff admits HCD chose to award Horne more work for Round 2 of ERAP, tasking it with allocating even *more* ERAP funds. *Id.* ¶ 82; *see* Contract, Ex. A at 59.

**III.  After Being Fired from Her Job at HCD, Plaintiff Sued Horne for Failing to Catch and Stop Fraudulent Claims Made *by Others to Horne* for ERAP Relief Funds.**

Plaintiff is a former HCD employee whom HCD hired to work on its ERA Program. SAC ¶ 12. She filed the original complaint in October 2022, ECF No. 1, after her superiors at HCD put her on administrative leave in February 2022, *id.* ¶ 12, and terminated her in April 2022, *id.* ¶ 18. She has twice amended her

---

[1] https://home.treasury.gov/system/files/136/ERA2_Allocations_ Eligible_Entities_572021.pdf.

-3-

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

complaint, including with the now operative pleading in December 2025. Plaintiff was never a Horne employee.

The SAC advances claims against Horne under four FCA provisions. 31 U.S.C. § 3729(a)(1)(A)-(C), (G). The crux of Plaintiff's FCA theory is that Horne allowed Government funds to be wasted by not doing enough to find and screen out "fraudulent" ERAP applications by tenants and landlords. *See* SAC ¶ 6. Plaintiff makes numerous conclusory allegations that Horne's processes somehow "fail[ed] to comply with ERAP requirements set forth in grant provisions, contracts, and related statutes." *Id.* ¶ 43; *see, e.g., id.* ¶¶ 47, 49. But she never identifies a specific thing Horne did or failed to do that she connects to a specific statutory or contractual duty. For example, Plaintiff complains that Horne did not use PeopleMap software to verify applicant addresses, *id.* ¶¶ 50, yet does not (and cannot) identify any specific requirement to use that software. *Cf.* Contract, Ex. A at 41 (expressly requiring Horne to use a different data source to validate addresses).

Plaintiff also does not contend that she has proof that any approved ERAP application was in fact fraudulent. Instead, she points to "irregularities" she believes to have found that she concludes made applications "potentially fraudulent." SAC ¶¶ 62-65. To provide one example of such an "irregularity," Plaintiff speculates that one application was fraudulent because a landlord's online username did not match his real name. *Id.* ¶ 62; *see also id.* ¶ 66 (complaining that a lease signature was typed, rather than docusigned). As the theory goes, at some point, Horne allegedly gave unspecified certifications of compliance with some unspecified requirements. But while Plaintiff vaguely references a false certification, she says little else about it. Nor does she identify a connection to any "claim."

Plaintiff offers even less about what happened outside of California for Horne to violate the FCA. She does not list the locations where these violations allegedly occurred; explain how Horne knowingly submitted false claims, what was misrepresented, or why those misrepresentations were material; or plead other elements to state claims for those alleged FCA violations. *See* SAC ¶ 4.

Finally, Plaintiff accuses Horne of negligently causing her termination from HCD. Her theory is that Horne's "negligence" in failing to catch more applications she assumes were fraudulent foreseeably caused her to blow the whistle in a way that caused HCD to put her on probation and then fire her.

The Government has declined to intervene. ECF No. 25. Defendant now moves to dismiss.

-4-

## ARGUMENT

**I.    The SAC Does Not State a Claim Under the FCA.**

**A.    The SAC's Allegations Do Not Support an FCA Claim Against Horne.**

To survive dismissal, the SAC's FCA claims "must not only be plausible, Fed. R. Civ. P. 8(a), but pled with particularity under Rule 9(b)." *United States ex rel. Turner v. Dynamic Med. Sys., LLC*, 2022 WL 20804350, at *6 (E.D. Cal. Jan. 24, 2022). It is a core requirement that FCA claims "identify the who, what, when, where, and how" of some type of identifiable false claim, as well as "what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).[2] The allegations must be specific enough to give the defendant notice of the "particular misconduct which is alleged to constitute the fraud." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993).

The SAC's FCA theories are defective because they are missing several elements of a viable FCA claim.

***No False Claims Alleged.*** For each of her FCA claims (Counts I-IV), Plaintiff "must establish that a false claim was submitted to the government," because "an actual false claim is the *sine qua non* of a False Claims Act violation." *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002). The FCA "attaches liability, not to underlying fraudulent activity, but to the 'claim for payment,'" meaning "[w]hat constitutes the FCA offense is the knowing presentation of a claim that is either fraudulent or simply false." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Plaintiff's theory is flawed because she does not allege facts that would support either part of that equation.

The gravamen of the SAC—that "Horne engaged in a pattern and practice of failing to comply with [supposed] ERAP requirements set forth in grant provisions, contracts, and related statutes, and then concealing its noncompliance," SAC ¶ 43—is not enough to make out an FCA claim because (i) without more, no part of that theory includes a misrepresentation, and (ii) it certainly does not include a claim. The FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations," *Univ. Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016), and not every "breach of contract, or violation of regulations or law, or receipt of money from the government where one is

---

[2] Except where otherwise indicated, all emphasis in quotations is supplied and all internal quotation marks, citations, and emendations have been omitted.

not entitled to receive the money, automatically gives rise to a claim under the FCA." *Hopper*, 91 F.3d at 1265.

Even if Plaintiff had identified some way in which Horne administered ERAP in breach of its Contract with HCD, without a separate false statement or implied false certification to the Government about what Horne did or did not do, breach alone cannot support an FCA claim. *Williams v. Med. Support L.A.*, 2023 WL 8798089, at *1 (9th Cir. Dec. 20, 2023); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 618 F.3d 505, 514 (6th Cir. 2010). Because "[i]t is not enough … to describe a private scheme in detail but then to allege simply … that claims requesting illegal payments must have been submitted," *Aflatooni*, 314 F.3d at 1002, the SAC allegations about conduct that did not comply with the Contract do not save the SAC's FCA claims.

The section of the SAC alleging that Horne made "representations regarding its ability to administer ERAP" in its response to California's Request for Proposal, SAC ¶ 37, also does not correct the SAC's failure to plead a false claim. Even if the SAC had adequately alleged something false about the Bid, a bid is fundamentally not a request for money. *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 491 F.3d 254, 260 (5th Cir. 2007). Where a false statement or certification is "untethered to any demand for money, there is no claim, and thus no violation of the FCA has been stated." *United States v. Blue Cross of Cal., Inc.*, 2024 WL 1020481, at *4 (E.D. Cal. Mar. 7, 2024).[3]

Finally, there is no allegation *Horne* presented the claims Plaintiff focuses on as being fraudulent (i.e., ERAP applications by ineligible landlords or tenants). The SAC itself describes those claims as being *presented to Horne*. *E.g.*, SAC ¶ 44. Nor does Plaintiff plausibly or particularly allege what acts Horne did take, or even could have taken, to proximately cause these purportedly fraudulent applications.

The bottom line is that, under the FCA's plain language, "without a claim for payment—regardless of the alleged existence of fraud—there can be no violation of the FCA." *United States ex rel. Lewis v. Honolulu Cmty. Action Program, Inc.*, 2019 WL 4739283, at *3 (D. Haw. Sept. 27, 2019). The allegations here fail in the exact same way as the insufficient allegations in *Aflatooni*, *Cafasso*, *Blue Cross*, and *Lewis*.

**_Inadequate "False Certification" Allegations._** Plaintiff's FCA claims also fail because she relies on a false certification theory that is not adequately pleaded. *See* SAC ¶¶ 4, 7. To plead implied false certification, Plaintiff must plead facts showing: (1) the defendant had "*previously* undertaken to expressly comply with a

---

[3] Plaintiff also has no claim under a fraudulent inducement theory because the SAC "provides no specific allegations … showing that [the defendant] did not intend to comply with the [bid] when [it was made]." *Williams*, 2023 WL 8798089, at *2.

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

law, rule, or regulation," (2) the defendant did not comply with that express promise, (3) the act of "submitting a claim for payment" "implicate[d]" that obligation, (4) the claim "'does not merely request payment, but also makes *specific representations* about the goods or services provided," and (5) "'the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.'" *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017-18 (9th Cir. 2018) (emphasis in original) (quoting *Escobar*, 579 U.S. at 190). Here, not only does the SAC not identify a claim, it does not allege, even generally, that Horne ever *expressly* promised to comply with a particular law or regulation, how Horne's supposed claims contained "specific representations about the goods or services provided," or how those claims constituted "misleading half-truths," let alone with specificity.

***Inadequate Fraudulent Scheme Allegations***. As the Ninth Circuit has held, an FCA Plaintiff must "come to court with [an exemplary] claim in hand or with sufficiently detailed circumstantial evidence to establish that the defendant actually submitted a false claim." *Aflatooni*, 314 F.3d at 1002. While the SAC plainly provides no specific examples of claims or invoices for payment, it also does not plead particularized facts about any scheme together with the "reliable indicia" that would be required to establish a "strong inference" "that false claims were actually submitted." *See Ebeid ex rel. United States v. Lungwitz,* 616 F.3d 993, 998-999 (9th Cir. 2010). Nor does it "give … notice of the particular misconduct which is alleged to constitute the fraud charged." *Id.* at 999. The SAC says only that HCD transferred funds to Horne to administer ERAP. SAC ¶ 45. It nowhere identifies claims that Horne submitted for payment that were fraudulent. Instead, it simply alleges vague misconduct and then leaps to the conclusion "that claims requesting illegal payments must have been submitted"—exactly what Rule 9(b) forbids. *Aflatooni*, 314 F.3d at 1002.

***Inadequate "How" Allegations.*** The SAC provides no specifics (or even a coherent theory) about how Horne submitted allegedly false claims. The allegations here are indistinguishable from those found insufficient in *Turner* where a relator generically asserted that defendants had "billed' Medi-Cal for overpriced specialty mattresses" but did not explain how it allegedly did so. 2022 WL 20804350 at *21. Likewise, here, the SAC does not bridge the gap between Horne's supposed misconduct and the conclusory, threadbare assertions at the beginning and end of the SAC that a false claim was presented. *E.g.,* SAC ¶ 2 ("Horne has knowingly presented and caused to be presented false and fraudulent claims"); *id.* ¶ 102 ("Defendants have violated the FCA … by knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval.").

-7-

***Inadequate "Who" Allegations.*** The SAC's allegations also fail to state any FCA claim because the SAC does not adequately particularize *who* at Horne made the underlying misrepresentations giving rise to the fraud claims. Where, as here, "a party pleads fraud against a corporation, the already heightened pleading standard is further heightened" such that "the plaintiff [must] ***allege the names of the persons who made the allegedly fraudulent representations***, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Arch Ins. Co. v. Allegiant Pro. Bus. Servs., Inc.*, 2012 WL 1400302, at *3 (C.D. Cal. Apr. 23, 2012). The SAC does not name or describe even one Horne employee allegedly involved in preparing or submitting any alleged claim or false certification to the Government. Instead, the SAC repeatedly refers only to "Horne" generically, *e.g.*, SAC ¶¶ 2-8, "Horne staff," *id.* ¶¶ 49, 55, 70, "Horne management," *id.* ¶ 51, or "Horne employees." *Id.* ¶ 72, 74, 75, 77. Without more specificity, the scheme alleged against Horne is not adequately particularized. *See United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048 (9th Cir. 2001) (affirming dismissal of FCA claim based on falsified test results because, *inter alia*, complaint did not identify employees who performed the tests); *Dofoms v. Fed. Home Loan Mortg. Corp.*, 2011 WL 1232989, at *14 (E.D. Cal. Mar. 31, 2011).

***Inadequate "When" Allegations.*** Plaintiff also fails to identify when Horne made the supposed misrepresentations at issue. Instead, she claims "[f]rom at least March 2021 through the present [i.e., the date of the SAC, December 2025], Horne has knowingly presented and caused to be presented false and fraudulent claims." SAC ¶ 2. Claiming that acts occurred sometime within a span of nearly five years comes nowhere close to pleading when fraud occurred with "particularity." *See United States ex rel. Mateski v. Raytheon Co.*, 745 F. App'x 49, 50 (9th Cir. 2018). Courts in the Ninth Circuit routinely dismiss claims involving much shorter timespans. *E.g.*, *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 887 (N.D. Cal. 2015) (three years); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) (two years).

**B.     The SAC Does Not State a Claim for Causing California to Make a False Certification.**

For several reasons, the SAC also fails to state an FCA claim based on its (flawed) theory that Horne violated the FCA by "caus[ing] the State of California and HCD to certify falsely to the Treasury that Round 1 funding had been obligated appropriately" through California's OFC. SAC ¶ 83.

***First,*** **California's Obligated Funds Certification Was Not a Claim.** California's OFC was not a "request or demand … for money or property" and, thus, not a claim. *See* 31 U.S.C. § 3729(b)(2). In *Blue*

-8-

*Cross*, which concerned the allocation of federal funds under the Affordable Care Act (ACA) Medicaid expansion, 2024 WL 1020481, at *1, the relator alleged the defendant had violated the ACA by instructing healthcare providers to falsely bill in a way that allowed the defendant to keep federal funds that California's Department of Healthcare Services (DHCS) intended to go to physicians. *Id.* at *2. The relator claimed that Blue Cross's data certifications under the ACA and representations to DHCS that it would comply with the ACA constituted false claims under the FCA. *Id.* at *2, 5. As *Blue Cross* held, however, the fatal flaw in this theory was that the "Defendants were never required to request funds in any capacity. Instead, the ACA … funds were paid out pursuant to statutory and regulatory requirements, not in response to any request from Defendants." *Id.* at *4. Because no request was required to "trigger disbursement of funds," "any alleged certifications … [were] untethered to any demand for money … and thus no violation of the FCA ha[d] been stated." *Id.* at *4. The same is true here. As explained *supra*, Treasury allocated ERAP funds based on a formula in the statute. *See* 15 U.S.C. § 9058a(b)(1). As in *Blue Cross*, the funds here were paid out without requiring the type of certification Plaintiff advances as the basis of her claim. *See Blue* Cross, 2024 WL 1020481, at *5.

   **Second, Horne did not cause HCD to submit a false OFC to Treasury.** Even accepting, *arguendo*, that the OFC was a claim and contained a false certification—neither of which is adequately pleaded—Horne did not cause its submission. Courts use "a proximate cause test to establish liability" under the FCA's "causing" provisions. *See United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2857372, at *4 (D. Idaho July 23, 2008) (collecting cases), *aff'd,* 398 F. App'x 233 (9th Cir. 2010). Where, as here, "Relator does not explain how Defendant … convinced [the person making the claim] to abandon their independent judgment" in submitting a false claim, the FCA "causing" claim fails as a matter of law. *United States ex rel. Puhl v. Terumo BCT*, 2019 WL 6954317, at *4 (C.D. Cal. Sept. 12, 2019).

   In *Terumo*, the relator alleged the defendant biotechnology company provided healthcare providers with incorrect billing codes to dupe Medicare into paying for non-covered procedures. *Id.* at *1. Applying, "general tort law principles," the court dismissed the FCA claim because there were too many "gaps in the causal chain" between the inaccurate information defendant provided "and the submission of false Medicare claims." *Id.* at *4. Merely providing inaccurate data a claimant *could use* does not equate to *causing* a false claim.

   Plaintiff's theory that Horne caused HCD to submit false certifications to the Treasury fails for the same reason. Indeed, the SAC alleges only that Horne made "reports" to HCD "without any legitimate effort to ensure

-9-

that ERAP funds were paid only to eligible landlords and households" and that California somehow "relied upon" those reports when it submitted its OFC. SAC ¶ 83. Plaintiff says nothing about what was in those reports or how they influenced California. Nor could she claim that California did not know how the ERAP funds were being distributed. Her own allegations are that HCD staff regularly discussed their belief concerning the existence and volume of purportedly fraudulent applications. *E.g.*, SAC ¶¶ 59-68, 85-86, 89. Indeed, Plaintiff claims that on "many" occasions *she herself* presented such evidence to the "HCD Legal Affairs Division." *Id.* ¶ 65. She also alleges that SCO independently audited the claims approval process. *Id.* ¶¶ 53-56.

As in *Terumo*, Plaintiff fails to allege sufficient facts to establish that Horne caused California to "abandon [its] independent judgment" in submitting the OFC. *See* 2019 WL 6954317, at *4.

## C. The SAC Does Not State a "Reverse" FCA Claim.

The SAC also fails to state a "reverse" FCA claim, which occurs where someone: (1) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay … money … to the Government," or (2) "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay … money … to the Government." 31 U.S.C. § 3729(a)(1)(G). Plaintiff's theory rests on the SAC's allegation that HCD's Contract with Horne provides that Horne "can be held financially responsible to recapture the wrongfully paid funds" if it "fail[ed] to ensure that only eligible recipients receive ERAP grant funds." SAC ¶ 46 (citing Contract, Ex. A, § 6(B)(3)). From that (and little else), the SAC concludes that Horne "conceal[ed] and improperly avoid[ed] an obligation to pay money to the Government" by "allowing payments to ineligible recipients, and then knowingly concealing the extent of such payments and disputing the ineligibility of recipients." *Id.*

The SAC's reverse FCA theory is flawed, however, because the "obligation to pay" Plaintiff advances, SAC ¶ 46, is legally inadequate. A reverse FCA claim requires a plausible, particularized allegation that the defendant had "a present duty to pay" the Government "at the time that the alleged false record or statement was made." *United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 819 (9th Cir. 2024). Here, the provision Plaintiff advances, SAC ¶ 40, provides that Horne "<u>may be</u> held financially responsible for duplicate payments or overpayments," Contract, Ex. A, § 6(B)(3). It is widely recognized that a contract provision stating that an amount "may" need to be paid is "the type of non-obligation that fails to satisfy 31 U.S.C. § 3729(a)(1)(G)." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 922 (6th Cir. 2017).

-10-

**D.    The SAC Does Not State a Claim for an FCA Conspiracy.**

The SAC's FCA conspiracy claim fails for multiple independent reasons. As a threshold matter, it is settled law that "an underlying violation of the other subparagraphs constituting a claim under the FCA is required to state a claim for conspiracy to commit a violation of the FCA." *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 940 (N.D. Cal. 2019). Because the SAC fails to plead any primary FCA violation, the conspiracy claim fails as well. Even if that were not so, the SAC contains *zero* alleged facts showing "agree[ment] with one or more persons to get a false or fraudulent claim," or an overt act by anyone "to effect the object of the conspiracy." *United States v. Vandewater Int'l Inc.*, 2019 WL 6917927, at \*5 (C.D. Cal. Sept. 3, 2019). Nor does Plaintiff allege, as Rule 9(b) requires, whom Horne supposedly conspired with, "the agreement that was reached, or when, where, or how it happened." *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1027 (S.D. Cal. 2017). She likewise "fail[s] to sufficiently detail the roles played by" Horne or anyone else "in the alleged conspiracy to defraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007). The SAC says nothing beyond a verbatim recitation of the elements that: "[b]y and through the acts described above, Defendants have knowingly conspired to commit violations of [three parts of the FCA]." SAC ¶ 114. This "does not meet any federal pleading standard, heightened or not." *Lupo*, 242 F. Supp. 3d at 1027.

**E.    The SAC Fails to State a False Records Claim.**

For the same reasons, the SAC does not state a false records (§ 3729(a)(1)(B)) claim. To do so, the SAC must show that Horne "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim," meaning "a false or fraudulent claim is an essential element." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335 (9th Cir. 2017). Because Plaintiff fails to plead "the submission of a false or fraudulent claim, [her] false records claim fails as a matter of law." *Id.* Beyond that, the SAC's false records theory fails under Rule 9(b) because it does not identify a single false record at issue, let alone allege who made it, when, where, or why it was false. Putting that aside, "there are no allegations connecting [any] statements to any claim made to the government." *Ibanez*, 874 F.3d at 916. For each reason, the SAC does not state a false records claim.

**F.    The SAC Does Not Plead Materiality.**

The SAC's allegations also do not and cannot withstand the "rigorous" pleading-stage assessment required by the Supreme Court's decision in *Escobar*. *See* 579 U.S. at 181. To plead materiality, the SAC must

-11-

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

allege *specific facts* about an underlying misrepresentation (connected to a claim) plausibly supporting the inference that the misrepresentation would influence a Government payment decision. *See* 31 U.S.C. § 3729(b)(4). The materiality assessment focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation," and is subject to Rules 8 and 9(b). *Escobar*, 579 U.S. at 193-195 & n.6.

The SAC purports to establish materiality with its allegation that "the [G]overnment would not have paid [Horne's administrative] fees if it had known that Horne would not comply with the ERAP statutory and grant requirements." SAC ¶ 82. As a matter of law, however, this theory does not and cannot support FCA claims because it focuses on "*illegal conduct*," SAC ¶¶ 103, 109, 115, 121 (Counts I – IV), and has no articulated connection to "the effect on the likely or actual behavior of the recipient of [an] alleged *misrepresentation*." *Escobar*, 579 U.S. at 193. Under *Escobar*, to demonstrate materiality, Plaintiff must plead how Horne's *false statements* were material to the Government's decision to pay. Without a nexus to a misrepresentation or claim, allegations about Horne "allowing illegal conduct"—even accepting the conclusory allegation that the Government would not have paid Horne if it knew of that conduct—do not plead materiality.

Regardless, the ERAP statutory framework set out in the SAC itself *indicates that the ability to distribute relief funds quickly was the true material issue under ERAP, not the ability to police against fraud or rigidly assess eligibility*. *See* 15 U.S.C. § 9058a(d). Congress even delegated to grantees the flexibility to assess for themselves which households qualified for ERAP relief funds. *Id.* (k)(3) ("eligible household" defined with respect to a determination made by "*the eligible grantee involved*," i.e., the state). In turn, Horne, as the contractor charged with administering California's ERAP relief funds, was delegated the authority to "review applications[] *and determine eligibility*." Contract, Ex. A § 5 (emphasis added). Notably, Plaintiff does not allege Congress created a mechanism to recoup funds from grantees that had made erroneous determinations or paid applicants who lied on their applications. Nor did Congress otherwise express that funds would *ever* be withheld or conditioned based on grantees (or their contractors) effectively taking or not taking particular steps to prevent fraud by, or rigidly verify the eligibility of, households applying for ERAP relief.

At the California level, both the SAC and the Horne Contract (incorporated in the SAC's allegations) demonstrate a framework under which HCD closely directed, monitored, and oversaw Horne's administration of the ERAP funds and the operation of the program. *E.g.*, SAC ¶¶ 40, 47. In fact, Plaintiff herself alleges that she, other HCD employees, and California's SCO were monitoring and repeatedly raised concerns to HCD

-12-

about suspected fraud in ERAP applications *submitted to Horne—not by Horne*. *Supra* at 10. Indeed, this is the entire asserted basis for Plaintiff's alleged knowledge of Horne's supposed fraud. Yet, despite HCD's undisputed awareness of these alleged challenges with getting relief funds to the right households, the SAC does not contend HCD ever asked or directed Horne to modify its practices or otherwise took issue with Horne's performance. Rather, *as the SAC concedes*, *HCD expanded Horne's role—selecting it to administer Round 2 of ERAP, thereby tasking Horne with allocating even more ERAP funds*. SAC ¶ 82.

Ultimately, even if Plaintiff's theory that some part of this process implicates a "claim" by Horne as the FCA defines it (it does not), when the Government "pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 579 U.S. at 195.

### G.    The SAC Does Not Plead Scienter.

The SAC's FCA claims should also be dismissed because the SAC does not adequately plead scienter, which requires establishing that someone acting on behalf of Horne "knowingly" submitted a fraudulent claim for payment or created a false record. *See* 31 U.S.C. 3729(b)(1)(A)-(B). The SAC does not contain any *facts* showing Horne submitted claims it knew were false or knowingly made false statements. Nor does Plaintiff allege Horne was reckless or indifferent to the truth of any promise, statement, or certification. Instead, she alleges that Horne "knowingly failed to comply with ERAP requirements and its own representations" or "knowing[ly] fail[ed] to protect Government funds." SAC ¶¶ 36, 51; *see id.* ¶¶ 5-7, 47 (similar). But even if Horne knew some ERAP funds were ending up at "ineligible households," that does not mean Horne knowingly *lied* in any certification, claim, or statement.

Plaintiff also cannot rely on conclusory allegations to establish scienter, such as that Horne "knowingly presented … false and fraudulent claims," "knowingly made or used false records," or "knowingly concealed and avoided repaying the Government." SAC ¶ 2. Rule 9(b) "does not mean that conclusory allegations regarding a defendants' knowledge will suffice." *Kirkpatrick v. Home Depot U.S.A.*, 2025 WL 2029714, at *7 (E.D. Cal. July 21, 2025). The complaint must still "set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred," which the SAC utterly fails to do. *Id.*

At most, the SAC alleges that Horne was underprepared or could have done a better job of detecting fraud in connection with ERAP. Even if that were true, the FCA does not penalize "negligence," "innocent

-13-

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

mistakes," or "faulty" or "low quality" work. *Wang v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992); *see Gonzalez ex rel. United States v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (FCA targets "knowing falsity" not negligence); *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (stating "proof of mistakes is not evidence" of fraud).

## II. In All Events, Claims Concerning FCA Violations Outside of California Should Be Dismissed.

Plaintiff's allegations focus almost exclusively on Horne's administration of California's ERA Program for HCD, except for a few passing references to ERAP work Horne did in an unspecified number of other states. SAC ¶ 4. To support those claims, at most, the SAC relays subjective anecdotes and opinions from eight staffers allegedly working on ERA programs in other states, who allegedly thought those programs could have been better trained or staffed. *See* SAC ¶¶ 71-80. Even if all those allegations are taken as true, they come nowhere close to showing that Horne submitted or caused false claims in connection with other state ERA programs—programs that necessarily worked differently from California's because of the diffuse manner in which Congress structured ERAP. Thus, at the very least, FCA claims based on conduct outside of California should be dismissed for failure to plead *any* required FCA elements in connection with *any* of those programs.

## III. Plaintiff's Negligence Claim Fails as a Matter of Law.

Plaintiff's negligence claim seeks to hold Horne liable for a speculative and attenuated chain of events that ultimately resulted in her being fired by HCD. According to the SAC, first, "Horne acted negligently in failing to find much of the massive fraud in the ERAP program." SAC ¶ 137. Second, this in turn caused Plaintiff to choose to "blow the whistle" on the supposed fraud. *Id.* ¶ 138. Third, HCD (illegally) retaliated against her by placing her on administrative leave. *Id.* ¶ 139. And fourth, HCD "rejected [her] during probation … effectively terminating her" employment. *Id.* This fails to state a negligence claim for several reasons.

*First*, the gravamen of Count VII is that Horne negligently interfered with Plaintiff's employment relationship with HCD. But "[i]n California there is no cause of action for *negligent* interference with contractual relations." *Davis v. Nadrich*, 94 Cal. Rptr. 3d 414, 421 (Ct. App. 2009) (emphasis in original). Plaintiff cannot artfully plead around this barrier by couching her claim as one for general negligence rather than negligent interference because the Court must "look past the form of the pleading to its substance and ignore any erroneous or confusing labels." *Larson v. UHS of Rancho Springs, Inc.*, 179 Cal. Rptr. 3d 161, 165 (Ct. App. 2014). "No amount of artful pleading can change the fundamental nature of plaintiff['s] claim." *Wong*

-14-

*v. Glendale Adventist Med. Ctr.*, 2018 WL 1179641, at *6 (Cal. Ct. App. Mar. 7, 2018); *cf., e.g., Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (federal court "looks beyond the labels used [in the complaint] to determine whether a proposed claim is barred" by law).

Second, the California Supreme Court has held that "[a]s a general rule … one owes no duty to control the conduct of another, nor to warn those endangered by such conduct," absent a "special relationship with either the … third party or with the victim." *Brown v. USA Taekwondo*, 483 P.3d 159, 162 (Cal. 2021). Plaintiff had no direct relationship whatsoever with Horne, let alone one that gives her "a right to expect protection from [Horne]" such as between "parents and children, colleges and students, employers and employees, common carriers and passengers, and innkeepers and guests." *Id.* at 166. Nor does she allege Horne had "an ability to control" HCD's employment practices. *Id.* Thus, Horne owed no duty to Plaintiff to prevent harm caused by HCD's decisions or her own actions. *See Moller v. Cnty. of San Bernardino*, 792 F. Supp. 3d 1038, 1049 (C.D. Cal. 2024) (holding that "superseding cause" could be plaintiff's own conduct). Indeed, Plaintiff's claim is indistinguishable from the one dismissed in *Nance v. United States*, where plaintiff claimed non-employer defendants "acted negligently and wrongfully, which led to [his] being terminated for filing whistleblower complaints" because he alleged no facts supporting any duty owed by the defendants. *Nance v. United States*, 2023 WL 5211606, at *5-6 (N.D. Ill. Aug. 14, 2023), *aff'd*, 2024 WL 4502107 (7th Cir. Oct. 16, 2024).

Third, such an attenuated theory lacks proximate cause because "intervening acts" of third parties break the causation chain, particularly where they are "highly culpable" or involve independent actions by "at least two other people, over a period of several days." *Steinle v. United States*, 17 F.4th 819, 824-25 (9th Cir. 2021). The SAC extensively alleges that others at HCD violated the law when terminating her.

**IV. The SAC Should Be Dismissed In Its Entirety with Prejudice.**

Plaintiff should not be given a fourth chance to come up with a viable FCA theory against Horne. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez*, 759 F.3d at 1116. Any further amendment would be futile for the reasons stated herein. No amount of repleading or additional facts will allow Plaintiff to correct for these fundamental barriers to an FCA claim against Horne. Thus, dismissal with prejudice is appropriate. *See Cafasso*, 637 F.3d at 1058; *Gonzalez*, 759 F.3d at 1116.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

DEFENDANT'S MEMORANDUM ISO MOTION TO DISMISS SAC                    2:22-CV-1893-JAM-AC

Dated: February 13, 2026

Respectfully submitted,

**Dechert LLP**

By:   *William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
**DECHERT LLP**
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Tel:  (213) 808-5767
Fax: 213-808-5760
bill.donovan@dechert.com

D. Brett Kohlhofer (*pro hac vice* pending)
**DECHERT LLP**
1900 K Street, N.W.
Washington, D.C. 20006
Tel: 202-261-3300
Fax: 202-261-3333
d.brett.kohlhofer@dechert.com

Theodore E. Yale (*pro hac vice* forthcoming)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-4000
Fax:  (215) 655-2455
theodore.yale@dechert.com

*Attorneys for Defendant BDO GOVERNMENT
SERVICES, LLC f/k/a HORNE LLP*

-16-